## SUPERVISOR OF ASSESSMENTS FOR MONT-GOMERY COUNTY *v.* ALSOP

[No. 348, September Term, 1962.]

*Decided June 28, 1963.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Harrison M. Robertson, Jr., Special Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellant.

*William T. Pace,* with whom were *William H. McCullough* and *McCullough & Pace* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

The question presented on this appeal is whether the seventy acre tract of land near Brookeville in Montgomery County owned by David H. Alsop should be assessed as a bona fide farm or as if it had been subdivided.

The owner acquired the property in question as a home in 1947 upon his retirement from the construction business. Besides the main dwelling occupied by the owner (and his wife until her death in 1955) as a residence, the tract of land is improved by two tenant houses, a dairy barn, a silo, a milk house, a tool house and several implement sheds. Until 1955 the land was occupied and operated as a dairy farm by tenants who were partners and lived in the tenant houses, and the owner was paid a money rent. Since 1955 the land has been used by a neighbor to graze from forty to fifty cattle, and for the growing of hay to be cut and stored and fed to the cattle sheltered in the dairy barn during the winter months. The owner, because he is satisfied to be relieved of cutting the hay and doing other general farm maintenance work, permits the cattleman to use the land and barn rent free. The tenant houses are occupied as homes by a taxi operator and a telephone linesman. Both pay a small money rent and one of them tills a vegetable or truck garden and supplies the owner with produce therefrom.

The owner admits that he is not and never was a farmer. He bought the farm as a place on which to retire and moved there for "peace of mind" and "got it."

When the assessor visited the farm for the purpose of assessing it for the year 1961, he refused to classify the land as a bona fide farm because, although it was utilized for grazing purposes, it was not being cultivated, and because the owner was not a farmer and was not tilling the land.

The owner protested the assessment of the farm as if it had been subdivided. In the course of the legal proceedings that followed, the Maryland Tax Court, in making its finding of facts, summarized them as disclosing—

> That the owner, seeking quiet and solitude, acquired a former farm as a country estate, and engaged in no bona fide operations;

That the owner, in order to maintain the property in proper condition as economically as possible and for no other reason, permitted a neighboring farmer to graze his cattle on the property, and to use some of the buildings thereon in return for keeping the hay cut and doing general maintenance work on and about the property, without monetary consideration;

That the owner rents the farm tenant houses to tenants at a reduced rental in order to obtain part time assistance from them in maintaining the farm and, as a matter of convenience to the owner, in tilling a small truck garden,

and concluded as a matter of law that the maintenance operations did not constitute active devotion to farm or agricultural use within the meaning of the Declaration of Rights, the tax statutes and the rules and regulations issued thereunder. In so doing, the tax court affirmed the assessment made by the assessor. But the Circuit Court for Montgomery County (PUGH, J.) reversed the tax court on the premise that grazing forty to fifty head of cattle, growing hay to feed them and using the former dairy barn to shelter the cattle, constituted active devotion "to farm or agricultural use." The Supervisor of Assessments for Montgomery County has appealed to this Court. We think the decision of the circuit court was correct.

What is now Code (1957), Art. 81, § 19(b), as it had been reenacted with amendments by Ch. 680 of the Laws of 1957, was held to be unconstitutional in *State Tax Comm. v. Gales,* 222 Md. 543, 161 A. 2d 676 (1960), as an attempt to set up a separate classification for land devoted to farm or agricultural use contrary to Art. 15 of the Declaration of Rights. The opinion reported in Volume 222 of the Maryland Reports was not filed until June 13, 1960, after a reargument of the case. But prior thereto, as a result of the publication in the *Daily Record* of February 9, 1960, of an opinion following the original argument (which was subsequently withdrawn), the Legislature promptly rewrote § 19(b) of Art. 81 by Ch. 52 of the Laws of 1960, which became effective June 1, 1960. And, by Chs. 64 and 65 of the Laws of 1960, the Legislature also proposed and

the voters ratified on November 8, 1960, amendments to Art. 15 as well as Art. 43 of the Declaration of Rights. Art. 15 as amended permitted separate classification and assessment of land. Art. 43 was so amended as to provide that "land actively devoted to farm or agricultural use shall be assessed on the basis of such use and shall not be assessed as if sub-divided."

Thereafter, § 19(b) of Art. 81, as enacted by Ch. 52 of the Laws of 1960, was repealed and reenacted without change by Ch. 455 of the Laws of 1961. Section 19(b) now provides that:

"Lands which are actively devoted to farm or agricultural use shall be assessed on the basis of such use, and shall not be assessed as if subdivided, it being the intent of the General Assembly that the assessment of farm land shall be maintained at levels compatible with the continued use of such land for farming and shall not be adversely affected by neighboring land uses of a more intensive nature. The General Assembly hereby declares it to be in the general public interest that farming be fostered and encouraged in order to maintain a readily available source of food and dairy products close to the metropolitan areas of the State, to encourage the preservation of open space as an amenity necessary to human welfare and happiness, and to prevent the forced conversion of such open space to more intensive uses as a result of economic pressures caused by the assessment of land at a rate or level incompatible with the practical use of such land for farming. The State Department of Assessments and Taxation shall establish criteria for the purpose of determining whether lands which appear to be actively devoted to farm or agricultural use are in fact bona fide farms and qualify for assessment under this subsection. Such criteria shall be promulgated in rules and regulations which shall include, but shall not be limited to, the following:

(1) Zoning applicable to the land.

(2) Present and past use of the land including land

under the soil bank provisions of the Agricultural Stabilization Act of the United States government.

(3) Productivity of the land including timberlands and lands used for reforestation.

(4) The ratio of farm or agricultural use as against other uses of the land."

Pursuant to authority conferred by the statute, the Department of Assessments and Taxation, in adopting its Regulation 9, formulated twenty-nine criteria (including the specified statutory standards) for determining whether lands which appear to be "actively devoted to farm or agricultural use are in fact bona fide farms and qualify for assessment" under § 19(b) of Art. 81.

The appeal from the tax court to the circuit court was taken pursuant to the provisions of § 229(1) of Art. 81, which, in addition to permitting the circuit court to hear the case de novo without a jury and to affirm, reverse, remand or modify the order appealed from, provides that "in the absence of any affirmative evidence to the contrary, or of any error apparent on the face of the proceedings," the case shall be affirmed. Except for a map of that part of Montgomery County in which the property in question is located, which was admitted as an exhibit by stipulation, the appeal was heard on the record from the tax court. And, while it may be that there was no "affirmative evidence to the contrary" of that produced before the tax court, it is apparent that there was "error on the face of the proceedings."

The tax court seems to have misconstrued both the letter and policy of the constitutional and statutory provisions and, by so doing, misapplied the law to the facts. Not only did the Legislature declare that it was in the general public interest that farming be fostered and encouraged in order to maintain readily available sources of food and dairy products, to promote the continued preservation of open spaces and to prevent the forced conversion of such spaces to more intensive uses as a result of economic pressures caused by the assessment of land at a rate incompatible with the practical use of such land for farming or other agricultural purposes; but the constitu-

tional and statutory provisions are explicit that the assessment of farm land shall be based on a valuation commensurate with the use of such land for farming. We think the application of the law to the facts in this case impelled the finding of a taxable basis that was favorable to the taxpayer rather than the taxing authority. Cf. *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 107 A. 2d 93 (1954). See 3 Am. Jur. 2d, *Agriculture,* § 8.

As we see it, the question here is not whether the owner and taxpayer is personally engaged in a bona fide farm operation or is permitting a neighbor to use the land for grazing cattle without monetary consideration, but instead is whether the land is actively devoted to a "farm or agricultural use." We think it was so used.

Applying only the specified statutory standards to the facts, it appears that the land in question is zoned rural residential and that it, as well as the surrounding lands, is primarily used for farming; that the present and past use of the land is and was agricultural; that the land is used as a pasture for grazing forty or more beef and dairy cattle and for the production of hay to feed such cattle during the winter months; and that the proportion of the farm used for agricultural purposes is far in excess of the proportion used as a curtilage to the main dwelling and as yards and vegetable gardens appurtenant to the rented tenant houses. This was enough to require a finding that the land was in fact a bona fide farm, without resorting to any of the other criteria set forth in Regulation 9, some of which seem to have a limited use as a guide in determining whether or not a particular tract of land is a farm within the meaning of the constitutional and statutory provisions. In the instant case it seems clear that the grazing and feeding of a herd of more than forty head of beef and dairy cattle on the land in question throughout the year is a "farm or agricultural use" within the meaning of the constitutional and statutory provisions. See 3 Am. Jur. 2d, Agriculture, §§ 1, 2.

For the reasons stated, the order of the lower court will be affirmed.

*Order affirmed; the appellant to
pay the costs.*